UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KAGETA TECH LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | No. 2:23-cv-1632 WBS CKD<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO TRANSFER VENUE |

----oo0oo----

Plaintiff Kageta Tech, LLC brought this action against defendant Ford Motor Company alleging patent infringement. Defendant now moves to transfer venue to the Eastern District of Michigan. (Docket No. 27.)

I. Factual Background

Plaintiff Kageta Tech is an LLC organized under California law, located in El Dorado Hills, California. (First Am. Compl. ("FAC") ¶ 1.) Scott Kageta, the manager of Kageta Tech and the named inventor of the patents at issue, resides in

1

El Dorado Hills, California. (Id. ¶ 2.)

Defendant Ford Motor Company is a Delaware corporation with its headquarters in Dearborn, Michigan. (See id. ¶ 3; Decl. of Murugan Sundaram Ramasamy ("Ramasamy Decl.") (Docket No. 27-2) ¶ 9.) Ford sells automobiles, automobile parts, and automobile accessories. (FAC ¶ 4.)

This case concerns defendant's automobile accessory kit that includes a camera intended to be mounted on the back of a trailer or other towed vehicle and an interface designed to be installed near a truck bumper for connecting the camera to the truck's video system. (See id. ¶ 5.) Plaintiff alleges that the accessory kit contains "a component intended to be installed on a truck that has connectors on one side for connecting wires from the truck and connectors on the other side for connecting wires from a trailer or other towed vehicle" that infringes on plaintiff's patents, U.S. Patent Nos. 9,154,746; 9,882,319; 10,418,757; and 11,075,489. (See id. ¶ 9.) Plaintiff also states that certain Ford vehicles are sold with the allegedly infringing component already installed. (See id. ¶ 43.)[1]

## II. Discussion

"A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 U.S.C. § 1404(a)." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district

---

[1] The court will collectively refer to the accessory kit component and the vehicles sold with the component installed as the "Accused Products."

2

court may transfer any civil action to any other district or division where it might have been brought.")  The purpose of this provision "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

Because the statute contemplates transfer "to any other district or division where [the action] might have been brought," see 28 U.S.C. § 1404(a), defendant must first make a threshold showing that venue and jurisdiction would be proper in the district to which it seeks transfer.  Vu v. Ortho-McNeil Pharm., Inc., 602 F. Supp. 2d 1151, 1155 (N.D. Cal. 2009); see also F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009) ("For transfer under § 1404(a), the threshold issue is whether the case 'might have been brought' in the proposed venue.").  Venue in patent cases is governed by 28 U.S.C. § 1400(b), rather than the more permissive general venue statute, 28 U.S.C. § 1391.  TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1518-19 (2017).  Under § 1400(b), patent infringement actions may only be brought in (1) "the judicial district where the defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

Here, venue is clearly proper in the Eastern District of Michigan because the defendant resides in that district.  (See Ramasamy Decl. ¶ 9.)  Plaintiff concedes that this action could have been brought in the Eastern District of Michigan.  (See Opp'n (Docket No. 39) at 12.)

Because venue would be proper in the Eastern District of Michigan, the court next "must evaluate three elements: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." See Anza Tech., Inc. v. Toshiba Am. Elec. Components, No. 2:17-cv-01688 WBS DB, 2017 WL 6538994, at *2 (E.D. Cal. Dec. 21, 2017) (quoting Safarian v. Maserati N. Am., Inc., 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008)) (internal quotation marks omitted). This analysis may include a number of factors, including "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Section 1404(a) affords district courts broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (internal quotation marks omitted).

The moving party has the burden of showing that transfer is appropriate. See Jones, 211 F.3d at 499; Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). "The defendant must make a strong showing of inconvenience to warrant

4

1  upsetting the plaintiff's choice of forum," Decker Coal, 805 F.2d
2  at 843, and transfer must do more than "merely . . . shift the
3  inconvenience from one party to another," Safarian, 559 F. Supp.
4  2d at 1071.
5       As explained in greater detail below, the court
6  concludes that the balance of factors weighs in favor of
7  transfer.
8       A.   Convenience of Parties
9       In considering convenience of the parties, courts
10 typically afford "great weight" to the plaintiff's choice of
11 forum.  Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).
12 Here, plaintiff's place of business is located in, and the
13 inventor of the patent resides in, the Eastern District of
14 California.  This district would be far more convenient for
15 plaintiff, who would have to travel a long distance to appear in
16 Michigan.
17      However, in patent cases, plaintiff's choice of forum
18 is afforded less weight because "the preferred forum is 'that
19 which is the center of gravity of the accused activity.'"
20 Peregrine Semiconductor Corp. v. RF Micro Devices, Inc., No. 12-
21 cv-911-IE-WMC, 2012 WL 2068728, at *6 (S.D. Cal. June 8, 2012)
22 (quoting Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260
23 (W.D. Wash. 2005)); see also Synopsis, Inc. v. Mentor Graphics
24 Corp., No. cv-12-5025-MMC, 2013 WL 1365946, at *5 (N.D. Cal. Apr.
25 3, 2013) ("[T]he center of the accused activity is the district
26 in which the defendant is alleged to have developed, tested,
27 researched, produced, marketed, and made sales decisions
28 concerning the accused product.") (citation omitted); Saleh v.

1  Titan Corp., 361 F. Supp. 2d 1152, 1158 (S.D. Cal. 2005) ("When
2  the conduct and events giving rise to the cause of action did not
3  take place in the plaintiff's selected forum, the plaintiff's
4  preference has minimal value even if it is his home forum.")
5  (quoting Boyd v. Snyder, 44 F. Supp. 2d 966, 970 (N.D. Ill.
6  1999)).  "'This makes sense because in determining whether
7  infringement has been established, the principal target of
8  inquiry is the design and construction of the accused product.'"
9  Signal IP, Inc. v. Volkswagen Grp. of Am., Inc., No. LACV 14-
10 03113 JAK JEM, 2015 WL 5766170, at *4 (C.D. Cal. Jan. 20, 2015)
11 (quoting Arete Power, Inc. v. Beacon Power Corp., No. CV 07-5167
12 WDB, 2008 WL 508477, at *5 (N.D. Cal. Feb. 28, 2008)).

13         Based on the information before the court, Ford's
14 alleged infringing activity largely occurred at defendant's
15 headquarters located in the Eastern District of Michigan.  (See
16 Ramasamy Decl. ¶ 9 ("The Accused Products were primarily
17 designed, developed, and tested at Ford's world headquarters in
18 Dearborn.").)  Plaintiff argues that defendant cannot be said to
19 have primarily designed the Accused Products because defendant
20 states that some components of the infringing products were
21 provided or assembled by external suppliers.  Even if this is
22 true, defendant states that the relevant suppliers have locations
23 in southeast Michigan.  (See id. ¶ 12.)[2]  At any rate, there is
24 no indication that any of those suppliers are located in the

---

[2]  Defendant states that the 7/12-way connector assembly was supplied by Erich Jaeger USA, Inc., located in Livonia, Michigan; the video control module was supplied by Magna International and Valeo North America, both located in in Troy, Michigan; and kit assembly was provided by Hollingsworth, LLC, located in Dearborn, Michigan.  (Ramasamy Decl. ¶ 12.)

Eastern District of California, and defendant's declaration states that no "substantive design or development of the Accused Products by Ford . . . took place in the Eastern District of California." (See id. ¶ 14.)

Because the Eastern District of Michigan appears to be the center of gravity of the accused activity, this factor weighs in favor of transfer.

### B. Convenience of Witnesses

"Convenience of nonparty witnesses 'is often the most important factor [in the section 1404(a) analysis].'" Tolentino v. Mossman, No. 2:07-cv-1243 GEB DAD, 2008 WL 1787752, at *1 (E.D. Cal. Apr. 18, 2008) (quoting A.J. Indus., Inc. v. U.S. Dist. Ct., 503 F.2d 384, 389 (9th Cir. 1974)); see also Welenco, Inc. v. Corbell, No. 2:13—cv-287 KJM CKD, 2014 WL 130526, at *7 (E.D. Cal. Jan. 14, 2014). "To demonstrate the inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." Williams, 157 F. Supp. 2d at 1108.

Here, defendant has identified by name ten current Ford employees who work at Ford's headquarters in Dearborn, Michigan, and indicated that those employees have "knowledge relevant to the functionality or sales of the Accused Products." (Ramasamy Decl. ¶ 10.) Defendant has further identified the topic on which the employees would testify on if called at trial. For example, Ford employee Albert Tan is described as an engineer who works on vehicle personalization and trailer accessories, and would presumably testify on that topic, which is plainly relevant to plaintiff's allegations. (See id.) Defendant has also

identified by name five former Ford employees, whom defendant believes to still reside in southeast Michigan based on their last known addresses, and similarly indicated the topic on which they would testify based on their former position at Ford. (See id. ¶ 11.) Defendant indicates that these employee and former employee witnesses have knowledge concerning various technical and non-technical (e.g., component purchasing) aspects of the design and manufacture of the Accused Products relevant to this action. (See id. ¶¶ 10-11.)

For the first time in its reply brief, defendant also identified six named third-party witnesses associated with the companies (Magna, Valeo, Erich Jaeger, and Hollingsworth) that supply components and services in connection with the Accused Products. (See Docket No. 40 at 7.) Defendant indicates that, if called at trial, these witnesses would provide testimony concerning the "independent development and operation" and "sales volumes, costs, and pricing" of the Accused Products. (See id.) Though the court need not rely on these witnesses, it notes that Ford's counsel represents that these individuals are all located in the Eastern District of Michigan. (See id.)

With respect to the witnesses identified by defendant, "the present forum would present a hardship" for "the simple reason that [this district] is significantly farther for these witnesses to travel to testify than is the Eastern District of Michigan." See Eclipse IP LLC v. Volkswagen Grp. of Am., Inc., No. EDCV 12-2087 PSG SPX, 2013 WL 9935572, at *3 (C.D. Cal. May 10, 2013). Plaintiff has not identified any non-party witnesses located in the Eastern District of California. Because it

8

appears there are several potential third-party witnesses located in the Eastern District of Michigan and none in the Eastern District of California, the convenience of non-party witnesses -- arguably the most important factor -- strongly favors transfer.

### C. Interests of Justice

The "interests of justice" are served by transfer where it would further the "efficient and expeditious administration of justice."  See HTC Corp. v. Acacia Research Corp., No. SACV 15-378-CJC-DFM, 2015 WL 9915938, at *3 (C.D. Cal. Sept. 10, 2015) (quoting Sherar v. Harless, 561 F.2d 791, 794 (9th Cir. 1977)). The court will analyze the various justice factors raised by the parties.

The court first considers the parties' relevant contacts with each forum.  Ford has extensive contacts in the Eastern District of Michigan, where it is headquartered and where the allegedly infringing activity primarily took place.  Ford also has contacts in the Eastern District of California. Specifically, plaintiff points to defendant's operation of a parts distribution center in Manteca, California, and defendant's sale of its products via multiple Ford dealerships across the district.  (See FAC ¶¶ 12-14.)  With respect to the Manteca facility, defendant's declaration states that the facility "does not sell or distribute the [accessory] kits" at issue.  (Ramasamy Decl. ¶ 16.)  Further, "[a]lthough many Ford vehicles are sold in this District -- and in other ones throughout the United States -- the contacts relevant to this case, i.e., those with the greatest significance as to the research [and] design of the accused products, are centered in the Eastern District of

Michigan." See Signal IP, Inc. v. Ford Motor Co., No. LA CV14-03106 JAK, 2014 WL 4783537, at *4 (C.D. Cal. Sept. 25, 2014). See also Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc., No. CV-17-6398-MWF (JCX), 2017 WL 8941278, at *5 (C.D. Cal. Nov. 2, 2017) ("From a sales perspective, this District is not particularly unique. In any event, in a patent infringement suit, sales and warehousing activities are far less important than research, development, and manufacturing activities.").

It appears that the only relevant contact in this district is plaintiff's invention of the product. However, this contact is far less relevant than defendant's allegedly infringing conduct that took place primarily in the Eastern District of Michigan. The parties' contacts with both forums thus weigh in favor of transfer.[3]

The court next looks to ease of access to sources of proof in the transferee district. "'In patent infringement cases, the bulk of the relevant evidence usually comes from the

---

[3] Plaintiff argues that the court should deny transfer because plaintiff is not subject to personal jurisdiction in the Eastern District of Michigan due to his lack of contacts there. While this is an interesting observation, as plaintiff concedes, a plaintiff's contacts with the transferee forum is not one of the factors considered in determining whether transfer of venue is appropriate. See In re Genentech, Inc., 566 F.3d 1338, 1348 (Fed. Cir. 2009) (indicating that the "uncertainty of [plaintiff's] personal jurisdiction" in the transferee venue is not a ground for denying transfer); 3 Cyclopedia of Fed. Proc. § 4:109 (3d ed.) ("Under [§ 1404(a)], a transfer may only be made to a court that has personal jurisdiction over the defendant . . . . There is no requirement under the statute that . . . there be sufficient minimum contacts with the plaintiff."). The court will not, as plaintiff urges, "reconsider" the authorities on this issue.

10

accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'"  Data Scape Ltd. v. Barracuda Networks, Inc., No. 1:19-cv-00179 LJO EPG, 2019 WL 3842884, at *5 (E.D. Cal. Aug. 15, 2019) (quoting In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Defendant asserts that its "engineering documents, computer systems, technical specifications, software code, drawings, physical specimens, component purchasing records, sales records, and other evidence pertaining to the Accused Products are located at Ford's facilities in Dearborn, Michigan." (Ramasamy Decl. ¶ 13.)  Defendant does not indicate why that evidence would be difficult to transport, and the court presumes that much of the evidence could be transmitted electronically.  See Eclipse IP, 2013 WL 9935572, at *6.  However, there is no indication that any relevant evidence is located in the Eastern District of California.  Because relevant evidence is located in the Eastern District of Michigan but it is not clear what difficulty, if any, there would be in transporting or transmitting that evidence to this district, this factor weighs only slightly in favor of transfer.

        The court next considers the availability of compulsory process to secure the attendance of witnesses.  Pursuant to Federal Rule of Civil Procedure 45, a district court may only compel a person's attendance via subpoena if the place of attendance is located "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person" under certain conditions.

11

See Fed. R. Civ. Proc. 45(c)(1).  As discussed above, defendant has identified several non-party witnesses not employed by Ford who reside in or near the Eastern District of Michigan, while plaintiff has not identified any third-party witnesses located in this district.  "This disparity is sufficient to find that it is substantially more likely that Defendant will be prejudiced at trial by the unavailability of compulsory process should the action remain in this District."  See Signal IP v. Ford, 2014 WL 4783537, at *5; see also Signal IP v. Volkswagen, 2015 WL 5766170, at *6 (same).  "The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."  See In re Genentech, 566 F.3d at 1345.

        Finally, the court considers differences in the cost of litigation in each district.  "Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify."  Italian Colors Rest. v. Am. Express Co., No. CV 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003).  Here, it would plainly appear to be more expensive to litigate in the Eastern District of California, as all of the third-party witnesses that have been identified by the parties would be required to travel a long distance to attend court proceedings.  In contrast, if litigated in the Eastern District of Michigan, only the plaintiff would need to travel to appear.  This factor therefore weighs in favor of transfer.

        This court sympathizes with plaintiff's professed desire to personally attend not just the trial but the critical pretrial hearings in his case, and the court cannot speculate

whether or to what extent plaintiff may be able to participate virtually in any of those proceedings in the Eastern District of Michigan. Nevertheless, the court finds that considered overall the § 1404(a) factors weigh in favor of transfer.

IT IS THEREFORE ORDERED that defendant's motion to transfer venue (Docket No. 27) be, and the same hereby is, GRANTED. This action is hereby TRANSFERRED to the Eastern District of Michigan for all further proceedings. The Clerk of this court is instructed to close this case after transfer is complete.

Dated: March 5, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13